UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BCI CONSTRUCTION, INC.,

                              Plaintiff,

                          v.                                      1:16-CV-1077
                                                                     (FJS/TWD)

797 BROADWAY GROUP, LLC,

                              Defendant.

797 BROADWAY GROUP, LLC,

                              Plaintiff,

                          v.                                      1:16-CV-1113
                                                                 (FJS/TWD)

BCI CONSTRUCTION, INC.,

                              Defendant.
_____

**APPEARANCES**                                                                     **OF COUNSEL**

**COUCH WHITE LLP**                                           JOEL M. HOWARD, III, ESQ.
540 Broadway
P.O. Box 22222
Albany, New York 12201-2222
Attorneys for BCI Construction, Inc.

**OFFICE OF DANIEL M. SLEASMAN**               DANIEL M. SLEASMAN, ESQ.
One Crumitie Road
Albany, New York 12211
Attorneys for 797 Broadway Group, LLC

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

These consolidated cases involve a contract dispute between BCI Construction, Inc. ("Plaintiff") and 797 Broadway Group, LLC ("Defendant"). Pending before the Court are Plaintiff's motion to depose Arbitrator John J. Phelan III, *see* Dkt. No. 9; Defendant's motion to remand Case No. 1:16-CV-113 to state court, to dismiss Case No. 1:16-CV-1077 for lack of subject matter jurisdiction, and for attorney's fees, *see* Dkt. No. 11; and Defendant's motion to confirm/modify its arbitration award, *see* Dkt. No. 21.

**II. BACKGROUND**

In the summer of 2006, Schenectady County issued a request for proposal ("RFP") for office space to house the Schenectady County Department of Social Services ("SCDSS"). *See* Dkt. No. 1-1. Defendant, a real estate developer, invited Plaintiff, a general building contractor, and an architectural firm to assist in developing a response to the RFP. *See id*. Among the many considerations for the project was the outside wall finishing. After all the parties met, they determined that they would only repair and paint the outside walls. *See id*. Plaintiff provided pricing to Defendant to develop an appropriate rent-rate, which became part of Defendant's response to the RFP. Ultimately, Defendant was selected as the developer in the fall of 2007; and Plaintiff and Defendant entered into a lump-sum contract whereby Plaintiff would undertake all the necessary upgrades. *See id.* at 1-2.

Shortly after the project was completed, problems became apparent. The stucco that Plaintiff had installed on the exterior of the building began to detach, with portions falling to the street below, due to the residual moisture in the brick to which the stucco was attached. *See id*.

at 2. When the parties could not amicably work together to fix the problem, Defendant unilaterally replaced the stucco shell with an EFIS wall system.

Defendant initiated arbitration to collect the money it had expended to repair the exterior walls. *See id.* Defendant argued that Plaintiff was responsible for investigating and testing the moisture of the brick on the building, which, had it done so, would have revealed that the planned stucco repairs would not have succeeded. *See id*. Plaintiff, on the other hand, maintained that it relied on the architectural firm's implicit acknowledgment that the stucco repair would work. *See id.* In addition, Plaintiff argued that Defendant failed to disclose the moisture condition and it was otherwise hidden; thus, it was Defendant's failure to investigate that caused the damage. *See id*.

John J. Phelan, III, served as the arbitrator for the parties' dispute. Mr. Phelan concluded, among other things, that Plaintiff was responsible for the final cost of construction because it had assumed the risk of additional costs by signing a lump-sum contract.[1] *See id*. Therefore, on August 25, 2016, Mr. Phelan ruled in favor of Defendant and awarded Defendant $472,697.60 for the construction and $114,136.98 for attorney's fees plus interest. *See id*. at 4; *see also* Dkt. No. 1-2.

Plaintiff initiated the current litigation in this Court on September 1, 2016, pursuant to 9 U.S.C. § 10(a)(2) of the Federal Arbitration Act ("FAA"), asking the Court to vacate the award because the arbitrator, Mr. Phelan, was biased. *See generally* Case No. 1:16-CV-1077, Dkt. No. 1 at ¶¶ 14-22. Plaintiff subsequently moved to compel a deposition of Mr. Phelan to explore the extent of his potential conflict of interest. *See* Dkt. No. 9.

---

[1] The arbitrator did, however, rule in favor of Plaintiff on the issue of whether the EFIS system was a betterment. Therefore, Defendant only recovered the estimated cost of repair, not the cost expended on installing the EFIS system. *See* Dkt. No. 1-1 at 4.

Meanwhile, in New York Supreme Court, County of Albany, Defendant filed a petition pursuant to New York Civil Practice Laws and Rules ("C.P.L.R.") § 7511 to confirm its arbitration award. *See* Dkt. No. 11-1 at 3. Plaintiff removed the state-court case to this District pursuant to 28 U.S.C. § 1441. *See* Case No. 1:16-CV-1113, Dkt. No. 11-2 at 11. The Court consolidated the two cases. *See* Case No. 1:16-CV-1077, Dkt. No. 8. Defendant subsequently moved to remand Case No. 1:16-CV-1113 and to dismiss Case No. 1:16-CV-1077 for lack of subject matter jurisdiction.[2]

### III. DISCUSSION

**A.    Subject matter jurisdiction**

It is well established that the FAA "does not independently confer subject matter jurisdiction on the federal courts." *Durant, Nichols, Houston, Hodgson & Cortese–Costa, P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009) (citations omitted). Rather, "'there must be an independent basis of jurisdiction before a district court may entertain petitions' to confirm or vacate an award under the FAA." *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (quoting [*Dupont*, 565 F.3d at 63]). Thus, a court must consider whether there is an independent jurisdictional basis over the parties' dispute before considering the merits of the arbitration proceedings. *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 140 (2d Cir. 2002) (holding § 9 does not independently create subject matter jurisdiction); *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 389 (2d Cir. 2016) (same with respect to    § 10).

---

[2] Defendant also moved to confirm/modify its arbitration award, pursuant to 9 U.S.C. §§ 9, 11, in the event the Court found that it had subject matter jurisdiction over the parties' dispute. *See* Dkt. No. 23-1.

The Second Circuit recently clarified that there are, generally speaking, two paths to invoke a district court's federal-question jurisdiction in suits brought pursuant to the FAA. First, "federal-question jurisdiction lies on the face of the petition where 'the petitioner complains principally and in good faith that *the award was rendered in manifest disregard of federal law*.'" *Doscher*, 832 F.3d at 375 (quotation, other citation, and footnote omitted) (emphasis added) (explaining that "[i]mplicit in this holding is the requirement that the legal rule that the arbitration panel allegedly manifestly disregarded is in fact a rule of federal law"). Second, "federal courts may 'look through' § 10 petitions, applying the ordinary principles of federal-question jurisdiction to the *underlying dispute*" to determine whether the dispute that is subject to arbitration evokes federal-question jurisdiction.[3,4] *Id*. at 389 (emphasis added). "The relevant question is whether the whole controversy between the parties -- not just a piece broken off from

---

[3] Although the Second Circuit in *Doscher* only explicitly discussed § 10, it recognized that the language used in § 9 and § 11 of the FAA contains substantially identical language to that used in § 10. *See Doscher*, 832 F.3d at 379 n.10.

[4] Under 28 U.S.C. § 1331, federal district courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A cause of action arises under federal law only when the plaintiff's 'well-pleaded complaint' raises an issue of federal law." *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987)). A well-pleaded complaint "raises an issue of federal law only when 'a right or immunity created by the Constitution or laws of the United States . . . [is an] essential [element] of the . . . cause of action.'" *Id*. (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S. Ct. 96, 81 L. Ed. 70 (1936)). "It is not enough that the complaint anticipates a potential federal defense." *Id*. (citations omitted).

Furthermore, the substantial federal question exception to the well-pleaded complaint rule, as articulated in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005), instructs district courts that "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*.

that controversy -- is one over which the federal courts would have jurisdiction." *Vaden v. Discover Bank*, 556 U.S. 49, 67 (2009).

In this case, Plaintiff concedes that its petition does not, on its face, invoke federal-question jurisdiction. Rather, Plaintiff argues that *Doscher*'s instruction to "look through" § 10 petitions means that the Court should conduct a thorough review of the record and allow Plaintiff to depose its key witness in hopes that an underlying federal question will present itself. Defendant, on the other hand, contends that the "look through" mentioned in *Doscher* only permits a district court to consider whether federal-question jurisdiction is present in the underlying dispute based on what the court can discern from the petition, the record attached to that petition, and common sense. Importantly, according to Defendant, Plaintiff does not make any arguments for what could form the basis for federal-question jurisdiction but, instead, hopes the Court will indulge in a fishing-for-jurisdiction expedition in its favor. Defendant argues that such a fishing expedition wastes judicial resources and should not be permitted.

In light of *Doscher*, the Court must consider whether the underlying dispute grants the Court an independent basis for exercising its federal-question jurisdiction despite nothing appearing on the face of the complaint to suggest that such jurisdiction exists. In doing so, the Court considers the complaint, the record, and any other evidence that the parties present. Plaintiff argues that the Court needs to hear testimony from Mr. Phelan so that it can properly review the underlying dispute. The Court disagrees. Even if, as Plaintiff argues, Mr. Phelan had a bias in favor of Defendant, such bias does not change the contractual nature of the underlying dispute nor would such bias demonstrate that Mr. Phelan entered the arbitration award in manifest disregard of federal law. Therefore, the Court concludes that it has before it all the

relevant information necessary to determine whether the parties' underlying dispute raises a federal question.

The parties engaged in arbitration because of a contractual dispute concerning who was responsible for making necessary repairs to a building. The legal issues underlying the parties' dispute are (1) who bears responsibility to repair a failed wall system in a lump-sum contract where a reasonable investigation could have identified the inadequacy of the planned wall system in the first place?; and (2) was Defendant's unilateral decision to install an EFIS building envelope a betterment or was that the bargained for result? Neither of these issues raises a federal question, nor is it reasonable to expect that further investigation would uncover one.

Moreover, nothing in Plaintiff's complaint supports its argument that a federal question is a component of the parties' underlying contract dispute. Plaintiff alleges that the choice to repair the exterior stucco was based on plans that the project architect prepared, and there was no showing that Plaintiff's work "deviated in any way from the design information" provided by the project architect. *See* Dkt. No. 1 at ¶¶ 24-27. Plaintiff further characterizes the underlying dispute as holding "Plaintiff responsible for the failure of a method of repair of the exterior stucco finish on the building which was contemplated by and agreed to by [Defendant] and the project architect." *See id.* at ¶ 23. These allegations demonstrate that there is no basis for finding that a federal question was involved in the parties' underlying dispute.[5]

Accordingly, because there is no independent basis for subject matter jurisdiction, the Court must dismiss Case No. 1:16-CV-1113 for lack of subject matter jurisdiction and remand Case No. 1:16-CV-1077 to state court.

---

[5] Furthermore, nothing in the parties' contract indicates that there were any federal issues. *See* Dkt. No. 22-3.

**B.      Attorney's fees and costs**

Defendant has requested an award of attorney's fees and other expenses pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (citations omitted).

Plaintiff argues that the Court should not award Defendant fees because its decision to remove the case was premised on a good faith attempt to have this Court apply "new law" as articulated in *Doscher*. *See* Dkt. No. 14 at 5. Plaintiff further states that "[t]he look through approach by definition must require something more than simply reading the face of the Complaint." *See id.*

An objectively reasonable reading of *Doscher* makes it clear that a court may "look through" to the underlying dispute to determine if there is any basis for federal-question jurisdiction. However, *Doscher* does not authorize post-arbitration discovery regarding the arbitration proceeding as a means to unearth a federal question. Plaintiff acknowledges as much by stating, "the *underlying substantive controversy* itself grants the district court subject matter jurisdiction over the action." *See* Dkt. No. 14 at 3 (emphasis added). Furthermore, Plaintiff asserts that "jurisdiction of a claim in federal *court is not founded upon the mechanics of arbitration or the arbitration agreement*, but instead upon the dispute underlying the arbitration." *See id.* (emphasis added).

Had Plaintiff articulated a colorable reason why the parties' underlying dispute presented a federal question then arguably an award of attorney's fees would not be warranted. *See Caggiano v. Pfizer, Inc.*, 384 F. Supp. 2d 689, 692 (S.D.N.Y. 2005) (stating that "the existence of a colorable question as to whether removal is proper[] weighs against the award of costs and fees" (citation omitted)). However, Plaintiff has failed to do so here. Therefore, because Plaintiff's removal was objectively unreasonable under the circumstances, the Court grants Defendant's motion for an award of attorney's fees and costs pursuant to 28 U.S.C. § 1447(c).[6]

### IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to remand Case No. 1:16-CV-1113 to state court and to dismiss Case No. 16-CV-1077 for lack of subject matter jurisdiction, *see* Dkt. No. 11, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall mail a certified copy of this Memorandum-Decision and Order to the Clerk of the New York State Supreme Court, Albany County, as 28 U.S.C. § 1447(c) requires; and the Court further

**ORDERS** that Plaintiff's motion to depose Arbitrator Phelan, *see* Dkt. No. 9, is **DENIED** as moot; and the Court further

**ORDERS** that Defendant's motion to confirm/modify its arbitration award, *see* Dkt. No. 21, is **DENIED** as moot; and the Court further

---

[6] In this regard, the Court will award attorney's fees and costs only to the extent that they are related to Defendant's motion to remand.

**ORDERS** that Defendant's motion for attorney's fees and costs associated with its remand motion pursuant to 28 U.S.C. § 1447(c), *see* Dkt. No. 11, is **GRANTED**. In this regard, the Court instructs Defendant to file and serve documentation, including contemporaneous time records for each attorney and paralegal who expended any time with regard to its remand motion and a description of the work performed, to support its request for attorney's fees and costs within fourteen (14) days of the date of this Memorandum-Decision and Order. Plaintiff shall file and serve any objections it has to Defendant's documentation within ten (10) days of the date on which Defendant files and serves such documentation.

**IT IS SO ORDERED.**

Dated: March 15, 2017
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge